IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PRIME INSURANCE COMPANY, for itself and as Subrogee and Assignee of ALOHA JETSKI, LLC,<br><br>  Plaintiff,<br><br>  vs.<br><br>OFFSHORE RISK MANAGEMENT, OFFSHORE RISK MANAGEMENT INSURANCE SERVICES; ORM INSURANCE SERVICES; ORM INC.; and BRUCE WOODS,<br><br>  Defendants. | CIVIL NO. 14-00545 DKW-KSC<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND (2) DENYING PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**ORDER (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND (2) DENYING PLAINTIFF'S COUNTER-MOTION
FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

The parties dispute their obligations under an insurance producer's

agreement.  Defendants Offshore Risk Management Insurance Services ("ORM")

and Bruce Woods served as brokers for the insured, Aloha Jetski, LLC, on a policy

underwritten by Prime Insurance Company  ("Prime").  In the aftermath of the

settlement of a state tort action on behalf of Aloha Jetski, Prime brings the instant

action against ORM and Woods.

Defendants move to dismiss all of the claims against them.  Prime, for itself

and as subrogee and assignee of Aloha Jetski, filed a counter-motion for summary

judgment on its breach of contract claim.  Because Prime fails to establish on the

current record that it is a party to the relevant producer's agreement, Defendants'

motion to dismiss is granted in part, and Prime is granted leave to file a second

amended complaint.  Prime's counter-motion for partial summary judgment is

denied for the reasons set forth below.

## BACKGROUND

During the relevant time period, Prime sold surplus lines of insurance

through State-licensed insurance brokers, including ORM and Woods.  Complaint

¶¶ 1-4.  Prime alleges that on March 23, 2010, ORM and Prime entered into an

Independent Producer's Agreement ("Agreement") establishing their respective

rights and obligations for insurance policies produced by ORM and underwritten

by Prime.  Complaint, Ex. A (Agreement).  According to Prime, the Agreement

limits ORM's authority to act on behalf of Prime without Prime's prior express

written instructions, and requires ORM to indemnify Prime against any claims or

2

costs that Prime may become obligated to pay as a result of any loss to an insured caused directly or indirectly by ORM.  Complaint ¶¶ 7-8.

ORM contends that it did not contract with Prime through an independent producer's agreement.  ORM asserts that on the face of the Agreement, Insurance Exchange Brokerage Service, Inc. ("IEBS") is the contracting entity through which Prime conducted business with ORM.  According to ORM, it entered into the Agreement with IEBS through Underwriters Direct Access ("UDA"), and UDA was an entity through which IEBS conducted business with ORM.

In the present dispute, Woods served as Aloha Jetski's insurance broker to locate insurers who were willing to issue liability insurance policies to cover its operations.  On or about January 17, 2012, Aloha and Woods signed an application for liability insurance ("Application") containing representations and warranties. Complaint, Ex. B (Application).  Prime issued Policy No. SC1201622 to Aloha Jetski for the period from January 18, 2012 through January 18, 2013 (the "Policy.").  Complaint, Ex. C (Policy).  As the Policy's "producer," ORM received a commission for its placement with Prime.  Complaint ¶¶ 9-10.

Aloha Jetski held a state Department of Land and Natural Resources ("DLNR") permit to rent jet skis for use in Keehi Lagoon.  On or about August 5, 2012, Aloha rented a jet ski to Tyson Dagley, and while operating the jet ski,

3

Dagley collided with and killed another Aloha Jetski client, Kristen Fonseca. Fonseca's estate and survivors filed a wrongful death lawsuit in Hawai'i state court against Dagley, Aloha Jetski and its owner Glenn Cohen.  They also filed a state court declaratory action against Prime, ORM, and Woods, arguing that Aloha Jetski's Policy violated a DLNR regulation applicable to commercial permit holders, mandating liability insurance coverage of not less than $500,000.  The Policy contained a limit of liability of $100,000 per person that was eroded by defense costs.[1]  The damages sought in the case against Aloha Jetski by the Fonseca plaintiffs substantially exceeded the Policy's limits.  Complaint ¶ 11.

Prime explains that in an April 4, 2014 ruling in the declaratory judgment action, the state court judge denied its motion for summary judgment, which sought a declaration that the Policy complied with the regulatory requirements applicable to Aloha Jetski's operations and that the Policy should be enforced according to its limits and terms.  The state court judge instead indicated that the Policy's terms and limits did not satisfy regulatory requirements, were contrary to public policy and should not be enforced.  According to the instant complaint,

---

[1]The record indicates that the DLNR never cited Aloha Jetski or suspended Aloha Jetski's DLNR-issued permit, despite being provided with a certificate of insurance showing that the amount of insurance purchased by Aloha Jetski was below the minimum required by DLNR regulations.  *See* Ex. H attached to Woods Decl. (1/19/2012 Certificate of Insurance).

before further rulings were made in the state court actions, the parties in the coverage and liability cases negotiated a global settlement.  Woods and ORM, whom the Fonseca plaintiffs had dismissed from the coverage case, did not participate in the settlement.  Woods and ORM declined Prime's request for contribution to the settlement or reimbursement of Prime for its contribution.  The settlement requires Prime to pay in excess of the Policy limits.  Complaint ¶¶ 12-13.  Aloha Jetski has assigned its claims to Prime.  Complaint ¶ 15.

Prime alleges the following claims against ORM and Woods: (1) breach of contract based on the Agreement (Count I); (2) negligence (Count II); (3) negligent misrepresentation (Count III); (4) promissory estoppel (Count IV); (5) unfair and deceptive acts and practices in violation of Hawaii Revised Statutes ("HRS") § 480-2 (Count V); and (6) punitive damages (Count VI).  ORM and Woods now ask the Court to dismiss all of the claims against them.  Prime seeks partial summary judgment on Count I.

## STANDARD OF REVIEW

### I.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554,

570 (2007)). "[T]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual

allegations that only permit the court to infer "the mere possibility of misconduct"

do not constitute a short and plain statement of the claim showing that the pleader

is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

Under Rule 12(b)(6), review is generally limited to the contents of the

complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

*Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). However, courts

may "consider certain materials—documents attached to the complaint, documents

incorporated by reference in the complaint, or matters of judicial notice—without

converting the motion to dismiss into a motion for summary judgment." *United

States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## II.  **Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## **DISCUSSION**

## I.  **Defendants' Motion to Dismiss**

The Court first addresses Woods and ORM's motion to dismiss.  The motion is granted as to the portions of Counts I, II, IV, and V identified below, with leave to amend.  Count VI, a stand-alone claim for punitive damages, is dismissed without leave to amend.  The motion is denied with regard to Count III.

### A.  **Breach of Contract (Count I)**

Prime alleges that on "March 23, 2010, ORM and Prime entered into an 'Independent Producer's Agreement' ('Agreement') that set forth ORM and Prime's respective rights and obligations regarding insurance policies produced by ORM and underwritten by Prime."  Complaint ¶ 7.  It further alleges that "Defendants have breached [various enumerated] provisions of the Agreement, causing Prime to sustain damages, attorney fees and litigation costs for which it is entitled to be compensated."  Complaint ¶ 18.  Woods and ORM move to dismiss on the grounds that neither Woods nor Prime is a party to the Agreement.

A breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract. *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, . . . the complaint must, at minimum, cite the contractual provision allegedly violated.  Generalized allegations of a contractual breach are not sufficient . . . the complaint must specify what provisions of the contract have been breached to state a viable claim for relief under contract law.")).

The contract upon which Count I is based is the Independent Producer's Agreement attached as Exhibit A to the complaint.  Prime does not dispute that Woods is not a party to the Agreement.  His name does not appear anywhere in the Agreement, the complaint does not allege that Woods assumed any obligation under the Agreement, or that his conduct amounted to a breach thereof.[2]  *See* Prime Counter-Motion at 7 ("The [complaint] alleges that ORM entered into a contract with Prime, ORM breached multiple provisions of the contract, and Prime suffered

_____

[2]Prime alleges that Woods signed the Application on behalf of Aloha Jetski, but that Application does not serve as the basis for Count I's breach of contract claim.

damages as a result of ORM's breaches."); *id.* at 10 ("The [complaint] alleges that ORM executed a contract (the Agreement), ORM breached the contract by failing to ensure that the Policy complied with Hawai'i's regulations and by failing to indemnify or reimburse Prime after it suffered damages, and Prime suffered damages as a result of ORM's breaches.").  Accordingly, the motion is GRANTED, and Count I is DISMISSED for failure to state a claim against Woods.

The Court next turns to whether Prime is a party to the Agreement. Although the complaint alleges that Prime and ORM executed the Agreement (*see* complaint ¶ 7), the Agreement itself states that the parties are Insurance Exchange Brokerage Service, Inc. ("IEBS"), "and/or any other entity through which IEBS conducts business", and "ORM Insurance Services and ORM, Inc."  In other words, it is not evident upon review of the Agreement that Prime is a contracting party with standing to enforce the Agreement.  The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  *Sprewell*, 266 F.3d at 988; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party.  We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters

9

properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations omitted).

Although Prime attempts to introduce evidence demonstrating that IEBS and Prime are entities through which one conducts business via the other,[3] the complaint does not allege *facts* establishing that Prime is a third-party beneficiary of the Agreement or otherwise specify how Prime has any legal rights under the Agreement.  Accordingly, as currently pled, Count I fails to state a claim for breach of contract as to Prime, although amendment may be possible.  *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) ("Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (citation and quotation marks omitted)).  Count I is therefore DISMISSED with leave to amend.

---

[3]Although the parties cite to declarations and exhibits in support of their arguments, the Court treats Woods and ORM's motion brought pursuant to Rule 12(b)(6) as a motion to dismiss for failure to state a claim and limits its review to that context.  The Court will not convert Defendants' motion into one for summary judgment.  The Court may consider documents attached to the complaint—including the Agreement and Application—documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B.**   **Negligence (Count II)**

In Count II, Prime brings a negligence claim against Woods and ORM on

behalf of Aloha Jetski –

> 20.   As Aloha's agents regarding insurance procurement, Woods and ORM owed a duty to use reasonable care in investigating Aloha's insurance needs and advising Aloha on insurance procurement.
>
> 21.   Woods' and ORM's conduct in assisting Aloha in the procurement of liability insurance fell below this standard of care.

Complaint ¶¶ 20-21.

In addition to the claim asserted on behalf of Aloha Jetski, Prime also

attempts to bring a negligence claim on its own behalf –

> 22.   As a producer of coverage underwritten by Prime, Woods and ORM owed a duty to use reasonable care to ensure that the application materials submitted by Aloha included all relevant and material information necessary for Prime to accurately and completely assess Aloha's application.
>
> 23.   Wood's and ORM's conduct in submitting Aloha's liability insurance application to Prime fell below this standard of care.
>
> 24.   The harm caused by Wood's and ORM's failure to satisfy their duties to Aloha and Prime to use reasonable care became evident on April 4, 2014, when the [state court summary judgment] Order was issued.

> 25.     As a direct and proximate consequence of Defendants'
> violations of their duty to use reasonable care, Aloha and
> Prime suffered losses for which Prime is entitled to be
> compensated both for itself and as Subrogee and
> Assignee of Aloha.

Complaint ¶¶ 22-25.

ORM and Woods argue that they were not Prime's agents and therefore owed no tort duty to Prime.  They acknowledge that ORM was Aloha Jetski's agent, but argue that Aloha Jetski has no claim to assign to Prime because Aloha Jetski has not suffered any damages since it incurred no obligation to pay money for the Fonseca settlement.

Defendants' motion is granted with respect to Prime's negligence claim brought on its own behalf, but denied with respect to the claim brought on behalf of Aloha Jetski.  The Court first addresses Prime's claim for negligence on its own behalf.

In order to succeed on a claim for negligence, a party must show:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks;

2. A failure on [the defendant's part] to conform to the standard required;

3. A reasonably close causal connection between the conduct and the resulting injury; [and]

4.   Actual loss or damage resulting to the interests of another.

*White v. Sabatino*, 415 F.Supp.2d 1163, 1173 (D. Haw. 2006) (citing *Ono v. Applegate*, 62 Haw. 131, 137, 612 P.2d 533, 538 (1980)).

Here, Prime fails to allege that ORM or Woods owed it a duty of care that was breached.  In opposition to the motion, Prime identifies no legal duty running from either ORM or Woods to itself.  Rather, it states that "[a]s Aloha's insurance broker, ORM's duty to exercise reasonable care, skill, and diligence required it to procure an insurance policy for Aloha that complied with Hawaiʻi's law – including Hawaiʻi's applicable statutory minimum for liability insurance."  Prime Counter-Motion at 18.  While an insurance agent may owe a general duty to exercise reasonable care in carrying out its duties in procuring insurance, without identifying a recognized legal duty owed directly to itself, Prime fails to allege a negligence claim on its own behalf against ORM or Woods.  The motion is GRANTED with respect to this portion of Count II.

The Court next turns to Prime's claim for negligence brought on behalf of Aloha Jetski.  The right of subrogation is derivative.  The subrogated insurer, known as the 'subrogee,' can be subrogated to and enforce only such rights as the insured, known as the 'subrogor,' has against the party whose wrong caused the

13

loss." *State Farm Fire & Cas. Co. v. Pac. Rent–All, Inc.*, 90 Hawai'i 315, 329, 978 P.2d 753, 767 (1999).  As the *State Farm* decision explained, "the insurer's subrogation rights rest upon the viability of the insured's claim against the tortfeasor."  *Id.* (citation omitted).  Here, Prime stands in the shoes of Aloha Jetski, has no greater rights than the insured, and is subject to the same defenses assertable against the insured.  *See Cumis Ins. Soc'y, Inc. v. CU Pac. Audit Solutions, LLC*, 2014 WL 6749229, at *3 (D. Haw. Nov. 30, 2014).

ORM and Woods contend that Aloha Jetski suffered no tort damages, and therefore had no claim to subrogate.  However, Count II alleges that, as a result of "Defendants' violations of their duty to use reasonable care, Aloha [Jetski] and Prime suffered losses for which Prime is entitled to be compensated both for itself and as Subrogee and Assignee of Aloha [Jetski]."  Complaint ¶ 24.  To the extent the complaint alleges that Aloha Jetski sustained actual loss or damage as a result of ORM or Woods' alleged negligence, it sufficiently includes the required elements of and states a claim for negligence.  As such, the motion is DENIED.

At the hearing on the motions, Prime reiterated that it intended to assert claims for negligence both on its own behalf and on behalf of Aloha Jetski.  As set forth above, Defendants' motion to dismiss is GRANTED with respect to Prime's claim for negligence on its own behalf and DENIED with respect to the claim for

negligence brought on behalf of Aloha Jetski.  Because amendment may be possible, the dismissal is without prejudice, and Prime is granted leave to amend the dismissed portion of Count II.

### C.    Negligent Misrepresentation (Count III)

In Count III, Prime alleges –

> 27.   As the agent of Aloha, Woods and ORM made representations regarding the Policy's compliance with Hawai'i laws and regulations applicable to the operations of Aloha.
>
> 28.   The representations were false, incomplete or misleading as a result of Wood's and ORM's failure to use reasonable care or competence in communicating the information.
>
> 29.   Aloha and Prime relied on the misrepresentation and suffered harm as a result.
>
> 30.   As a direct and proximate consequence of Defendants' negligent misrepresentations, Aloha and Prime sustained losses for which Prime is entitled to be compensated both for itself and as Subrogee and Assignee of Aloha.

Complaint ¶¶ 27-30.

The elements of negligent misrepresentation under Hawai'i law are as follows: "(1) false information [was] supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient

relies upon the misrepresentation." *Smallwood v. Ncsoft Corp.*, 730 F. Supp. 2d

1213, 1231 (D. Haw. 2010). A negligent misrepresentation claim under Hawai'i

law does not require intent, and accordingly is not subject to the pleading

requirements of Federal Rule of Civil Procedure Rule 9(b). *See Menashe v. Bank*

*of New York*, 850 F. Supp. 2d 1120, 1137 (D. Haw. 2012); *see also Peace*

*Software, Inc. v. Hawaiian Elec. Co.*, 2009 WL 3923350, at *6 (D. Haw. Nov. 17,

2009) (Noting that, although some Ninth Circuit cases state that negligent

misrepresentation claims are subject to Rule 9(b), those cases interpreted

California law; in comparison, "the Hawaii Supreme Court does not appear to

[equate] negligent misrepresentation with fraud.").

Here, Prime sufficiently alleges that (1) Woods and/or ORM supplied false

information regarding the Policy's compliance with Hawai'i law as a result of the

failure to exercise reasonable care or competence; (2) Prime and Aloha Jetski

suffered losses; and (3) Prime and Aloha Jetski relied upon the misrepresentations.

*See* Complaint ¶ 9 ("On or about January 17, 2012, Aloha and Woods signed an

application for liability insurance . . . containing representations and warranties

regarding responsibility for the adequacy of insurance and enforceability of

coverage limits"); *id.* ¶¶ 28-29 ("The representations were false, incomplete or

misleading as a result of Wood's and ORM's failure to use reasonable care or

16

competence in communicating the information.  Aloha and Prime relied on the

misrepresentation and suffered harm as a result.").  Accordingly, the complaint

contains sufficient factual matter, accepted as true, to state a claim for negligent

misrepresentation that is plausible on its face.  The motion is DENIED with respect

to Count III.

      **D.**      **<u>Promissory Estoppel (Count IV)</u>**

In Count IV, Prime alleges –

> 32.    As the producer placing Aloha's liability coverage with Prime, Woods and ORM promised they would assure compliance with all regulatory compliance, that they would defend and indemnify Prime against certain claims caused directly or indirectly by any act, omission or misrepresentation by Woods or ORM and that they would reimburse Prime for any and all losses, costs or expenses paid or incurred by Prime that resulted from Woods' or ORM's failure to defend and indemnify Prime.

> 33.    Woods and ORM expected and foresaw that Prime would rely on these promises.

> 34.    Prime relied on the promises to its detriment. Prime underwrote coverage to Aloha on the understanding that the Policy complied with applicable statutes and regulations. When a court disagreed, exposing Aloha and Prime to liability, Prime spent more than the Policy required to defend Aloha and agreed to pay damages to settle the liability claims against Aloha for more than the Policy required. Prime incurred these losses, and others,

with the expectation that Woods and ORM would honor
their promises of defense, indemnity and reimbursement.

35.   Justice requires enforcement of the promises Woods and
ORM made to Prime.

Complaint ¶¶ 32-35.

Under Hawaii law, promissory estoppel contains four elements:

(1) There must be a promise; (2) The promisor must, at the time
he or she made the promise, foresee that the promisee would
rely upon the promise (foreseeability); (3) The promisee does in
fact rely upon the promisor's promise; and (4) Enforcement of
the promise is necessary to avoid injustice. The "essence" of
promissory estoppel is "detrimental reliance on a promise."

*Gonsalves v. Nissan Motor Corp. in Haw., Ltd.*, 100 Hawai'i 149, 164-65, 58 P.3d

1196, 1211-12 (2002).  A promise is "a manifestation of intention to act or refrain

from acting in a specified way, so made as to justify a promisee in understanding

that a commitment has been made."  *Id.* at 165, 58 P.3d at 1212.

Notwithstanding its equitable nature, Count IV appears to be based on

alleged promises set forth in the Agreement.  Paragraph 32, for instance, mirrors

the contract's indemnification provision.  As a result, Count IV lacks facial

plausibility for the same reasons set forth above with respect to Count I.  The

relationship between IEBS and Prime is not sufficiently alleged in the complaint.

Without more, the Agreement between IEBS and ORM cannot support the Count

18

IV allegation that promises made by Woods and ORM were actually *made to Prime* and foreseeably relied upon *by Prime.* That is, there are no factual allegations relating to promises made by Wood or ORM to Prime—only legal conclusions called into question by the face of the Agreement. *See* Complaint ¶ 32; Ex. A. As was the case with Count I's breach of contract claim, Count IV's promissory estoppel claim is DISMISSED with leave to amend.

### E. Unfair and Deceptive Trade Practices (Count V)

Count V alleges that "Defendants violated Haw. Rev. Stat. § 480-2 by engaging in . . . unfair and deceptive acts and practices." Complaint ¶ 39. Specifically, Prime asserts that –

37. As set forth in Counts II and III above, Defendants made material misrepresentations and omitted material and relevant facts and information that resulted in the procurement of liability insurance that was insufficient for Aloha's operations and that subjected Prime to an unanticipated regulatory risk for which no premium was charged.

38. Defendants' material misrepresentations and omissions had a tendency to deceive consumers acting reasonably under such circumstances and did, in fact, deceive Aloha and Prime under the circumstances described above.

39. Defendants violated Haw. Rev. Stat. § 480-2 by engaging in said unfair and deceptive acts and practices.

> 40.     Defendants' unfair and deceptive acts and practices actually and proximately caused actual injury and damages to Prime for itself and as Aloha's Assignee and Subrogee.

Complaint ¶¶ 37-40.

Prime asserts a claim for "unfair and deceptive acts and practices."  HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Although "[a]ny person" may bring an action for unfair methods of competition in violation of Section 480-2, only consumers, the attorney general, or the director of the office of consumer protection may bring an action for unfair or deceptive acts or practices in violation of Section 480-2.  HRS § 480-2(d), (e); *see also Davis v. Four Seasons Hotel, Ltd*., 228 P.3d 303, 307 (Haw. 2010).  A "consumer" is a "natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." HRS § 480-1.  Prime does not purport to be a "consumer."  Rather, in opposition to the motion, it argues that it sought to bring a claim for unfair methods of competition under HRS § 480-2(e), not for unfair and deceptive acts and practices.

The allegations in Count V, however, do not support a claim for unfair methods of competition.  To state a claim for unfair competition, a plaintiff must allege facts showing "(1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages."  *Davis*, 228 P.3d at 315.  Prime does not clearly allege how Woods or ORM's conduct have or will negatively affect competition.  Prime clearly alleges only that ORM and Woods "violated Haw. Rev. Stat. § 480-2 by engaging in . . . unfair and deceptive acts and practices," and that these "unfair and deceptive acts and practices actually and proximately caused actual injury and damages" to Prime and Aloha Jetski.  Complaint ¶¶ 39-40.  These allegations relate to claims for unfair and deceptive acts and practices—not to claims for unfair methods of competition.

Accordingly, because Prime is not a "consumer" for purposes of bringing an unfair and deceptive acts and practices claim, and, because it does not allege the elements required for an unfair methods of competition claim, Count V fails to state a claim for violation of HRS § 480-2(a), and the motion is GRANTED.  Because amendment may be possible, Count V is DISMISSED with leave to amend.

### F.  **Punitive Damages (Count VI)**

Count VI requests relief that is derivative of Prime's other claims.  A claim for punitive damages is not an independent tort, but a remedy that is incidental to another cause of action.  *See Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.,* 879 P.2d 1037, 1049 (Haw. 1994) (citing *Kang v. Harrington*, 587 P.2d 285, 291 (Haw. 1978) (holding that a claim for punitive damages "is not an independent tort, but is purely incidental to a separate cause of action")); *see also United States ex rel. Lockyer v. Haw. Pac. Health*, 490 F. Supp. 2d 1062, 1088-89 (D. Haw. 2007) (holding that, to the extent the complaint could be read to allege a separate and independent cause of action for punitive damages, the defendant would be entitled to summary judgment on that count); *Hale v. Hawaii Publs., Inc*., 468 F. Supp. 2d 1210, 1233 (D. Haw. 2006) (granting motion for summary judgment as to a separate claim for punitive damages, but noting that the plaintiff could seek punitive damages as part of prayer for relief).

Defendants' motion is GRANTED, and Count VI is DISMISSED WITHOUT LEAVE to amend to include a stand-alone claim for punitive damages. Because punitive damages *may* be available as a remedy for other causes of action, Prime is granted leave to include such a request in its second amended complaint, if supported by the allegations therein.

22

The Court next turns to Prime's counter-motion for partial summary judgment on Count I.

## II.   Prime's Counter-Motion for Partial Summary Judgment

Prime argues that it is entitled to summary judgment on its breach of contract claim because ORM violated multiple provisions of the Agreement, including Paragraphs B, K, and J.  In support of its motion, Prime produced evidence that ORM entered into the Agreement with IEBS—and that Prime is an entity through which IEBS conducts business—ORM and Woods applied for Aloha Jetski's Policy, Prime underwrote the Policy, and Prime paid ORM a commission for producing Aloha Jetski's Policy.  Declaration of David McBride ("McBride Decl.") ¶¶ 3-14, Exs. 6-8 (Application); Declaration of Catherine Aubuchon ("Aubuchon Decl.") ¶ 7, Ex. 4 (Agreement).

ORM disputes that Prime has standing to enforce the Agreement.  It contends that IEBS was the entity through which Prime conducted its insurance business and not the other way around.  According to ORM, it entered into the Agreement with IEBS through UDA, not Prime.  Declaration of William J. Coates ("Coates Decl.") ¶ 2; *id.* ¶ 3 ("IEBS was the entity through which Prime conducted business with ORM.").  In 2012, when Prime issued the Policy to Aloha Jetski, ORM did not have a producer's agreement directly with Prime; on July 7, 2013,

23

Prime and ORM entered into an Independent Producer's Agreement for the first time. Coates Decl. ¶¶ 3, 5. ORM points to the Declaration of Prime's corporate attorney, David McBride, who states that IEBS "provided brokerage services for and on behalf of Prime." McBride Decl. ¶ 4. It also points to the Certificate of Insurance for Aloha Jetski issued by IEBS to the DLNR (*see* Declaration of Bruce Woods ("Woods Decl.") ¶ 19, Ex. H), and Aloha Jetski's Policy covering the period from January 18, 2012 until January 18, 2013, which was issued by Prime, with IEBS listed as Prime's broker, and Offshore Risk Management listed as producer. *See* Prime Ex. 8 at 2-3. According to ORM, these documents are consistent with IEBS being the entity through which Prime did business with ORM, which acted on behalf of Aloha Jetski.

Woods explains that he served as Aloha Jetski's insurance broker to locate insurers who were willing to issue liability insurance policies covering Aloha Jetski's operations. Woods Decl. ¶¶ 2-4. Aloha Jetski, through its owner Glenn Cohen, always determined how much coverage it desired to purchase and how much it was willing to pay in its dealings with Woods. Woods Decl. ¶ 5. According to Woods, Aloha Jetski did not request nor did ORM assume any advisory duties with respect to Aloha Jetski's coverage minimums. Woods Decl. ¶¶ 6-7.

Aloha Jetski had a liability insurance policy issued by Prime that was set to expire on January 8, 2012.  Woods Decl. ¶ 8.  On December 7, 2011, IEBS and UDA provided a quote for renewal of Aloha Jetski's policy with several per person limits up to $250,000.  During the same time, Woods was obtaining quotes from other insurance companies on behalf of Aloha Jetski.  Woods Decl. ¶¶ 9-11, Ex. C. On January 10, 2012, at the request of Aloha Jetski, Woods obtained a renewed quote from IEBS and UDA, with a limit of liability of $100,000 per person, after the earlier December offer expired on January 6, 2011.  Woods Decl. ¶¶ 12-13, Ex. E.  On January 16, 2012, Aloha Jetski ordered a renewal of Aloha Jetski's Prime policy as quoted.  Woods Decl. ¶ 14.  On January 18, 2012, Woods emailed Aloha Jetski's request form to IEBS, with a requested bind date of January 18, 2012. Woods Decl. ¶ 15, Ex. G.  Prime issued Aloha Jetski the surplus lines policy covering the period from January 18, 2012 until January 18, 2013.  Woods Decl. ¶¶ 17-18; Prime Ex.8 (Policy).

In light of the conflicting record regarding which parties have rights to enforce the Agreement, the Court finds that genuine issues of material fact preclude summary judgment on Count I.  At this time, Prime has not established as a matter of law that it is an entity through which IEBS conducts business. Although ORM and IEBS are signatories to the Agreement, Prime presents

25

evidence that IEBS was a sister company that provided brokerage services, and is owned by the same parent entity, that should give Prime rights to enforce the Agreement as an "entity through which IEBS conducts business."  Prime Ex. 4; *see also* McBride Decl. ¶¶ 3-4, Ex. 9.  ORM, however, presents contrary evidence showing that IEBS was an entity through which Prime conducted business, and therefore, that Prime is not a party to the Agreement as an entity through which IEBS conducts business.  *See* Woods Decl., Exs. E (Renewal Quote) & G (1/18/12 Email).  Accordingly, issues of fact preclude summary judgment on this issue.

Issues of fact also persist with respect to whether ORM breached the Agreement.  For example, Prime contends that ORM failed to accept "all responsibility to satisfy any and all obligations of taxes and fees requirement by any state and to otherwise assure compliance with all regulatory requirements," in violation of Paragraph B of the Agreement.  In the state court coverage litigation, the judge indicated in a summary judgment ruling that Aloha Jetski's Policy did not comply with the DLNR's permitting insurance minimums, and held that eroding limits were against public policy and invalid.  Aubuchon Decl. ¶ 6; Ex. 3 (4/4/2014 Order).  Prime argues that ORM had a contractual obligation to ensure that the Policy it procured for Aloha Jetski complied with the DLNR regulations.  In fact, Prime asserts expansively that the Agreement required ORM to assure

26

compliance with any and all regulatory requirements, without any limit whatsoever.  *See* Prime Reply at 6.

ORM denies breaching this provision.  It contends that it has satisfied all obligations of taxes and fees required by the State of Hawaii in connection with Aloha Jetski's surplus lines insurance policy, and that it complied with all regulatory requirements applicable to *the issuance* of the policy, which is all that was required of it.  *See* Coates Decl. ¶ 4.  On January 19, 2012, a certificate of insurance was issued to the DNLR disclosing the limit of liability below the DLNR's regulatory requirements, and the DLNR never took any action with respect to Aloha Jetski's permit.  Woods Decl. ¶¶ 16, 19; Ex. H.  The Court agrees that, even assuming Prime has standing to enforce the Agreement, there is a genuine issue of material fact regarding whether ORM breached the Agreement and whether any alleged breach damaged Prime.

Accordingly, Prime's counter-motion for partial summary judgment on Count I is DENIED.

## III.   <u>Summary of Rulings</u>

Woods and ORM's Motion to Dismiss is granted with respect to Count I (Breach of Contract), granted in part and denied in part with respect to Count II (Negligence), denied as to Count III (Negligent Misrepresentation), granted as to

Count IV (Promissory Estoppel), granted as to Count V (HRS § 480-2), and granted as to Count VI (Punitive Damages).  Prime is granted leave to amend with respect to the dismissed portions of Counts I, II, IV, and V.

Prime's Counter-Motion for Partial Summary Judgment is denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.  Prime is GRANTED until **September 21, 2015** to file a second amended complaint in accordance with this order.  Prime's Counter-Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

DATED: August 24, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

_Prime Insurance Company vs. Offshore Risk Management et al_;
Civil No. 14-00545 DKW-KSC; **ORDER (1) GRANTING IN PART AND DENYING IN PARTDEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND (2) DENYING PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**